**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**DEBRA PRICE,**

                                        **Plaintiff,**

**v.**

                                                                **13-CV-504(HKS)**

**ROSWELL PARK CANCER INS.,**

                                        **Defendant.**

───────────────────────────────────

**DECISION AND ORDER**

              Plaintiff, a former food service worker at Roswell Park Cancer Institute, alleges that she was discriminated against on the basis of her race and disability and retaliated against for complaining of that discrimination to Roswell's Human Resources Department and the U.S. Equal Employment Opportunity Commission.  She also contends that Roswell disclosed her confidential medical information.  Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117, and the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6.  Dkt. #20.  On March 17, 2015, the parties consented pursuant to 28 U.S.C. § 636(c) to have the undersigned conduct any and all further proceedings in this case.  Dkt. #42.  Plaintiff confirmed her consent at a status conference held on June 2, 2015.  Dkt. #49.  Thereafter, on August 27, 2015, plaintiff moved for summary judgment.  Dkt. #71.  Defendant cross-moved for summary judgment on October 28, 2015.  Dkt. #81.  For the following reasons, plaintiff's motion is DENIED, and defendant's cross-motion is GRANTED.

## **FACTUAL BACKGROUND**

The following facts are taken from the Second Amended Complaint with

Exhibits (Dkt. #20; Dkt. #21); Defendant's Statement of Material Facts (Dkt. #81-2),

Defendant's Appendix to Local Rule 56 Statement of Material Facts (Dkt. #81-3;

Dkt. #83); Plaintiff's Affidavit in Support of Summary Judgment (Dkt. #85),[1] and Attorney

Affidavit in Support of Defendant's Reply and in Opposition to Plaintiff's Motion for

Summary Judgment (Dkt. #87).

Plaintiff, who is African American, worked in the Nutrition and Food

Services Department at Roswell Park Cancer Institute ("Roswell") from

December 31, 1997, until December of 2011, when Roswell terminated her from her

employment.  Dkt. #81-2, ¶ 1; Dkt. #81-2, ¶ 2; Dkt. #83-18, ¶ 1.  At all times during her

Roswell employment, plaintiff was a member of the worker's union, Civil Service

Employees Association, Inc., local ("CSEA").  Dkt. #81-2, ¶ 4.

Employee discipline at Roswell is governed by Article 33 of the CSEA

Institutional Services Unit Agreement.  Dkt. #83-10, pp. 1-10.  When Roswell seeks to

discipline one of its employees, it must serve the employee with two copies of a Notice

of Discipline ("NOD"), which specifies the employee's offending conduct and proposes a

penalty for that conduct.  Dkt. #83-10, p. 3; Dkt. #84-7, p. 20; CSEA Agree. § 33.3(a)(1).

Consistent with Article 33, Roswell must serve the employee personally, if possible, or

---

[1]Although docketed as a "Motion for Summary Judgment," Document 85 itself is titled "Summary Judgment Rule 56 Rebuttal."  Therein, plaintiff asserts facts related to her original motion for summary judgment and attaches documentary evidence.  Under the circumstances, this Court construes it as an affidavit in support of plaintiff's original motion for summary judgment (Dkt. #71) and not as a second motion for summary judgment.  The Clerk of the Court is directed to amend the docket to reflect that Docket No. 85 is an affidavit and not a motion.

otherwise, by registered or certified mail, return receipt requested.  Dkt. #83-10, p. 3;

CSEA Agree. § 33.3(a)(5).  The employee has a right to object by filing a grievance

within 14 calendar days from the "date of service" of the NOD.  Dkt. #83-10 pp. 3-4;

CSEA Agree. §§ 33.3(a)(7); 33.3(b).  A penalty may only be imposed if:  the employee

fails to file a grievance within the allocated time-frame; having filed a grievance, the

employee elects not to pursue it; the arbitrator upholds or modifies the penalty; or the

matter is settled.  Dkt. #83-10, p. 4; CSEA Agree. § 33.3(b)(1).  The Agreement

specifically authorizes a maximum penalty of dismissal for 3 or more NODs for

unauthorized absences including improper use of sick leave for more than 3 but less

than 8 consecutive workdays.  Dkt. #83-10, p. 10; CSEA Agree. § 33.3, "Time and

Attendance Schedule."


In 2006, plaintiff informed Roswell that she had Tinnitus, a sensation of

ringing in the ears, and asked for an accommodation.  Dkt. #83-2, ¶ 9.  Roswell relieved

plaintiff from working under the kitchen grill and stove exhaust fans and allowed her to

wear soft foam earplugs to alleviate her symptoms.  Dkt. #81-2, ¶ 6; Dkt. # 83-2, ¶ 9;

Dkt. #83-4, p. 2; Dkt. #84-1, p. 2.  Plaintiff never complained to her supervisor or anyone

else at Roswell that these accommodations were insufficient.  Dkt. # 81-2, ¶ 7;

Dkt. #83-2, ¶ 9; Dkt. #83-3, pp. 5-6.

Plaintiff also suffered from "situational" or "work related anxiety" for which she sought leave from work. Dkt. #21, pp. 8, 18, 22-23, 24. On July 3, 2006, plaintiff submitted a "Confidential Medical Certificate" ("CMC")[2] from Karol Rejman, a Family Nurse Practitioner, diagnosing plaintiff with "anxiety – work related," indicating that she was 100% disabled from June 6, 2006, through August 4, 2006. Dkt. #21, p. 23. In a second CMC dated August 1, 2006, Nurse Rejman diagnosed plaintiff with "anxiety situational," but indicated that "8/6/06 [patient] will no longer be disabled." Dkt. #21, p. 22. On April 1, 2011, plaintiff submitted a CMC stating that she was "100% disabled" from working as a result of her anxiety. Dkt. #21, p. 24. Roswell permitted plaintiff to take leave under the Family and Medical Leave Act ("FMLA") for her condition, specifically, "1 day per episode," "2-3 times per month." Dkt. #21, p. 3; Dkt. #83-2, ¶ 10.

From 2005 until her 2011 termination, plaintiff was repeatedly reprimanded for excessive tardiness, unscheduled absences, unauthorized absences, insubordination, poor performance, and inappropriate conduct toward a supervisor, among other things, resulting in multiple NODs against her. Dkt. #81-2, ¶ 8; Dkt #83-6, p. 2; Dkt. #84-7, pp. 1-39. Of the 15 NODs issued against plaintiff during her employment, at least 8 involved time and attendance violations. Dkt. #83-6, p. 2. For example, in March of 2005, plaintiff failed three times to report to work as scheduled or to notify her supervisor that she would not be coming in within one hour of her

---

[2] A CMC form is used by Roswell to verify the reason for an employee's medical absence and confirm the time period covered by his or her medical condition. Dkt. #81-2, ¶ 13.

scheduled shift.  Dkt. #84-7, p. 4.[3]  After being counseled about "excessive unscheduled absenteeism," plaintiff had another 13 unscheduled absences, losing 16 full workdays and 2 partial days of work between July 2008 and March 2009.  Dkt. #84-7, pp. 18-19.  Thereafter, plaintiff had 6 additional unscheduled absences, losing a total of 8 workdays between June 2009 and March 2010.  Dkt. #84-7, p. 25.  Between May and October 2010, plaintiff had 4 unscheduled absences, one where she left work over 7 hours early, resulting in a total loss of 4 workdays.  Dkt. #84-7, p. 34.

After being warned about her "continued, excessive" tardiness, plaintiff was late to work 14 times between May 6, 2007, and April 1, 2009, once by more than 3 hours.  Dkt. #84-7, pp. 15, 18.  She was tardy another 19 times between April 2010 and July 2011.  Dkt. #84-7, pp. 31, 37.  In May 2010, plaintiff worked only part of her shift on two separate days, resulting in more than 8 hours of unscheduled absence from her job.  Dkt. #84-7, p. 32.

Other NODs against plaintiff allege insubordination or inappropriate conduct.  A February 2006 NOD alleges that when plaintiff's supervisor attempted to correct how plaintiff was washing the pots and pans, plaintiff told her, "listen, you are not going to tell me how to do my job," "I know what I am doing," and "lighten up, . . . everyone works at their own pace."  Dkt. #84-7, p. 8.  In October 2007, plaintiff allegedly ignored and then "glared" at her supervisor when she asked why plaintiff was 35

---

[3]Plaintiff attempted to justify her unauthorized March 2005 absences after the fact by submitting a CMC dated March 29, 2005, in which she refused to disclose what medical condition caused her absence from work.  Therein, Nurse Rejman states, "[the] patient refuses to allow me to mention [her] medical condition," and explains that plaintiff was "not disabled" during the covered period of "3/7/05 -3/29/05," and would return to work on March 30, 2005.  Dkt #21, p. 21.

minutes late reporting for her shift.  Dkt. #84-7, p. 12.  In July 2010, plaintiff told her

other supervisor, who was talking to a caterer about cake, "You don't need any cake."

Dkt. #84-7, p. 28.

The vast majority of times, Plaintiff grieved the NOD against her, resulting

in a reduced penalty or settlement.  Dkt. #83-6.  For example, in October 2009, plaintiff

was charged with "Inappropriate/Intimidating Conduct Toward a Co-Worker," when she

allegedly approached a colleague and stated, "you know I can fight, just ask J.D.," and

"you know they are trying to fire me, so we can just meet outside at 3:30," or words to

that effect.  Dkt. #84-7, p. 23.  Although the proposed penalty was termination, plaintiff

settled the case by agreeing to attend an anger management course and serve

disciplinary probation in exchange for back pay and benefits.  Dkt. #21, p. 6; Dkt. #81-2,

¶ 9; Dkt. #83-7, p. 3.  Plaintiff also agreed to withdraw a previously-filed EEOC

complaint without prejudice.  Dkt. #85, p. 17; Dkt. #83-7, p. 3.

On March 15, 2011, plaintiff filed a complaint with the New York State

Division of Human Rights ("NYS DOHR"), claiming that Roswell retaliated against her

for filing a complaint with the EEOC.  Dkt. #84-8, p. 2.  It is unclear what happened with

this particular NYS DOHR complaint but a subsequent complaint, which plaintiff filed

with the division after her termination and detailed below, resulted in the NYS DOHR

issuing a finding of "no probable cause" and ordering dismissal of her complaint.  Dkt.#

83-19, p. 2.

Roswell contends that plaintiff was absent without authorization from her job for four or more scheduled work days between September 24, 2011 and October 7, 2011.  Dkt. #81-2, ¶ 10; Dkt. #83-2, ¶ 11.  Further, according to Roswell, "the impact of Ms. Price not showing up for work, or even providing the advance notice that she was not going to be at work, [had] a negative impact on Department operations." Dkt. #83-2, ¶ 11.  Plaintiff claims that she went out on "FMLA Sick Leave" on September 26, 2011.  Dkt. #21, p. 43.

Plaintiff apparently requested FMLA leave for her "own serious health condition" starting on October 3, 2011.  Dkt. #21, p. 33.  According to a "Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act)" dated October 7, 2011, Roswell determined that plaintiff was eligible for FMLA but went on to state:

> As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period.  **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return [sufficient certification to support your request for FMLA leave] to us by 10/21/2011**. . . .  If sufficient information is not provided in a timely manner, your leave may be denied.

Dkt. #21, p. 33 (emphasis in the original).

Among the papers submitted in support of plaintiff's motion for summary judgment are two prescriptions signed by Nurse Rejman:  one dated September 26, 2011, stating, "Off 9/29/11 [and] 9/30/2011" and "May return 10/1/11

[without] restrictions" (Dkt. #21, p. 35); and another dated October 11, 2011, stating, "Off work until 11/1/11 d/t illness." (Dkt. #21, p. 34).  It is unclear whether these prescriptions were ever provided to Roswell.  Even if they were, the prescriptions do not establish that plaintiff had a medical condition that prevented her from working during the period for which she sought leave.

It is undisputed that Roswell sent three letters to plaintiff at her mailing address requesting a CMC for her unauthorized absences.  Dkt. #81-2, ¶¶ 11-12, 16, 18.  As explained above, a CMC is a form used to verify the reason for an employee's medical absence and confirm the time period covered by the medical condition.  Dkt. #81-2, ¶ 13.  The first letter dated October 7, 2011, requested plaintiff's response by October 14, 2011.  Dkt. #81-2, ¶ 11.  Plaintiff failed to provide a CMC or otherwise respond to the letter.  Dkt #81-2, ¶ 14.  The second letter dated October 14, 2011, requested a CMC by October 21, 2011.  Dkt. #81-2, ¶ 15.  Plaintiff failed to provide a CMC or otherwise respond to this second letter.  Dkt. #81-2, ¶ 17.  Roswell then mailed a third letter to plaintiff's address on October 24, 2011, informing her that because she failed to provide Roswell with a CMC, her absences would be treated as unauthorized and she would be subject to disciplinary action.  Dkt. #81-2, ¶¶ 18-19.  Plaintiff did not respond.  Dkt. #81-2, ¶ 20.

As a result, Roswell issued two NODs against plaintiff on October 28, 2011:  one NOD for failing to provide a CMC for her unauthorized absences, proposing a one-month suspension without pay as the penalty (Dkt. #83-14,

p. 3); and a second NOD for her unauthorized absences, proposing termination as the penalty (Dkt. #83-14, p. 11); both advising plaintiff that she had 14 days to file a grievance (Dkt. #81-2, ¶ 25).  Both NODs were sent by regular and certified mail to plaintiff's address.  Dkt. #21, p. 38; Dkt. #83-14, p. 2.[4]  The copies of the NODs sent by regular mail were not returned, but the certified copies were "returned to sender" after three attempts to deliver them.  Dkt. #85, p. 74, 81.  In any case, plaintiff does not dispute that she received the letters.  According to her deposition testimony, plaintiff lived at the address to which the letters and NODs were mailed and received her mail there.[5]  Dkt. #81-2, ¶ 5; Dkt. #83-3, p. 11.  Plaintiff did not grieve either of the October 28, 2011 NODs.  Dkt. #81-2, ¶ 26.  At her deposition, plaintiff testified that she had seen the October 28, 2011 NOD proposing that she be terminated.  Dkt. #83-3, pp. 3, 11-12.  When asked: "And upon receiving that, what did you do?," plaintiff replied: "I don't think I did anything."  Dkt. #83-3, p. 12.

On October 28, 2011, Plaintiff submitted a CMC, signed by Nurse Rejman on October 18, 2011, stating that plaintiff was disabled from performing normal work activities by "acute anxiety," but could return to work on November 1, 2011. Dkt. #83-13, p. 2.  The section of the CMC titled "Dates Covered by the Certification" was left blank.  Dkt. #83-13, p. 2.  In Roswell's view, the CMC authorized plaintiff to take time off "in the future," but did not justify plaintiff's earlier absences in September and October.  Dkt. #81-2, ¶ 22.

---

[4] In addition, Roswell noticed CSEA by Memorandum on October 28, 2011, that plaintiff had been served that day with two NODs.  Dkt. #83-15, ¶ 15.
[5] Plaintiff testified that she was the one who would receive and open the mail sent to her address.  When asked "Was anyone else authorized to receive and open your mail at that time?" plaintiff answered: "No."  Dkt. #83-3, p. 11.

Plaintiff returned to work on November 3, 2011.  Dkt. #21, p. 34.  By Designation Notice dated November 8, 2011, Roswell approved plaintiff's FMLA leave request, authorizing her to take future leave for her situational anxiety "10 days per episode" "1 time/every 2 months."  Dkt. #21, p. 49.  The Notice clearly states that a "CMC is required for absences greater than 4 work days even those associated with FMLA covered conditions."  Dkt. #21, p. 49; Dkt. #85, p. 20.  It does not authorize any retroactive leave under the FMLA.

In November and December 2011, plaintiff was personally served with "Interrogation Memo[s]" advising her that Roswell was investigating her and requesting her presence for "administrative interview[s]."  Dkt. #21, p. 45; Dkt. #71, pp. 12-13, 15; Dkt. #85, p. 26.  According to plaintiff, she attended one interview on November 28, 2011, with a CSEA representative, but two later interviews were cancelled.  Dkt. #21, p. 45; Dkt. #71, p. 7, 15.  On December 29, 2011, Roswell notified plaintiff that because she failed to grieve the October 28, 2011 NODs, her employment was terminated effective immediately.  Dkt. #81-2, ¶ 27; Dkt. #85, pp. 21, 30.

Plaintiff contends that Roswell waited more than 14 days after the October 28, 2011 NODs were issued to fire her because she had a pending EEOC charge that was not dismissed until December 22, 2011.  Dkt. #85, pp. 7, 77-78.  According to Roswell, plaintiff's termination was delayed by the procedures of the New York State Time and Attendance Disciplinary Umpire Panel ("Panel") and the holiday

season.  Specifically, when a time and attendance NOD is served by certified mail, the

14-day timeframe begins to run when the U.S. Postal Service returns the "green card"

confirming that the NOD was undeliverable.  Dkt. #83-15, ¶ 16.  If the employee does

not file a grievance within 14 days of that date, Roswell notifies the Panel, which in turn

issues a "Penalty Implementation Letter" authorizing the proposed discipline.

Dkt. #83-15, ¶ 16.  The U.S. Postal Service notified Roswell that plaintiff's NOD was

undeliverable on December 6, 2011.  Dkt. #83-15, ¶ 17.  Roswell notified the Panel on

December 19, 2011, that plaintiff had not grieved the NOD, and the Panel sent the

Penalty Implementation letter on December 22, 2011.  Dkt. #83-15, ¶ 18.  Roswell did

not terminate plaintiff until December 29, 2011, after the Christmas holiday.

Dkt. #83-15, ¶ 18.


On June 14, 2012, plaintiff filed an Unfair Labor Practice charge with the

State of New York Public Employment Relations Board ("PERB"), alleging that CSEA

failed to protect her.  Dkt. #81-2, ¶ 28.  The PERB Administrative Judge ruled against

plaintiff, finding that it was her own failure to timely grieve and not the CSEA's fault that

she missed her grievance deadline.  Dkt. # 81-2, ¶ 28.


Thereafter, on August 24, 2012, plaintiff filed a complaint with the NYS

DOHR, claiming that Roswell discriminated against her on the basis of disability and

race.  Dkt. #81-2, ¶ 29; Dkt. #83-18, pp. 2-4.  The NYS DOHR issued a decision on

February 21, 2013, which stated, "[t]here is no nexus between Complainant's race/color

and disability and her termination due to her failure to provide Respondent with proper

medical documentation." Dkt. 83-19, p. 2. The NYS DOHR found no probable cause to believe that Roswell "has engaged in or is engaging in . . . the unlawful discriminatory practice complained of." Dkt. 83-19, p. 2.  The EEOC issued a "Dismissal and Notice of Rights" letter dated March 21, 2013, in which it "adopted the findings of the state or local fair employment practices agency that investigated this charge." Dkt. #5-1, p. 9. Plaintiff commenced this action against Roswell on May 13, 2013.


## DISCUSSION AND ANALYSIS


**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).


A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment:

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


**Title VII**

Title VII of the Civil Rights Act of 1964 provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).


Claims of employment discrimination brought under Title VII are analyzed using the burden-shifting test developed by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  To establish a prima facie case of discrimination under Title VII, plaintiff must demonstrate that:  (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010).  Although plaintiff need only produce "*de minimis*" evidence at the prima facie stage, *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001), "a plaintiff's case must fail if she cannot carry this preliminary burden."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).

This Court finds that plaintiff has failed to meet the minimal evidentiary showing that racial discrimination played a motivating role in Roswell's decision to fire her.  Even if plaintiff could meet her initial burden, Roswell has offered a legitimate, nondiscriminatory reason for firing her that plaintiff has failed to show was pretextual.  Other than alleging that her supervisors are Caucasian and she is African American, plaintiff has offered no proof in admissible form that Roswell terminated her because of her race.  In her motion papers, plaintiff alleges that an unnamed Caucasian male "affiliated with Roswell" physically assaulted another employee, and was not suspended until "weeks later."  Dkt. #85, pp. 13-14.  She contends that "months later[,] I had a verbal altercation with a co-worker[;] I was suspended the same day and facing termination . . . [and] had to drop my discrimination charge against Roswell . . . in order to get a paycheck and come back to work."  Dkt. #85, p. 13-14.

Construing plaintiff's allegations as asserting disparate treatment based on race, they are insufficient to survive a motion for summary judgment for several reasons.  As an initial matter, plaintiff's assertions about the alleged altercation and the subsequent fallout are not supported by testimony, affidavits, or other admissible evidence.  Even if plaintiff's allegations were admissible, the Caucasian man that plaintiff describes is not a "similarly situated" to plaintiff.  To make a prima facie case of disparate treatment, the individual with whom plaintiff attempts to compare herself must be "similarly situated" in "all material respects," including holding the same position, reporting to the same supervisor, and being subject to the same workplace standards. *Gross v. Nat'l Broad. Co.,* 232 F. Supp. 2d 58, 70 (S.D.N.Y. 2002); *Ramos v. Marriott Int'l, Inc.,* 134 F. Supp. 2d 328, 339 (S.D.N.Y. 2001).  Plaintiff alleges that the unnamed man was "affiliated with Roswell" and "providing a service to Roswell's patients," which makes him distinguishable from plaintiff, a traditional Roswell employee.  Dkt. #85, p. 14.  Even if the man was "similarly situated" to plaintiff, he was ultimately suspended for his alleged aggression, just as plaintiff was.  In this respect, plaintiff was not treated in a disparate manner to her Caucasian colleague.

In her self-styled "rebuttal" to Roswell's motion for summary judgment, plaintiff attaches "an article about discrimination at Roswell Cancer Institute" from the Challenger Community News about "complaints from lower payed [sic] employees at Roswell who are black."  Dkt. #85, pp. 15, 39.  This Court notes that plaintiff's case is not a class-action lawsuit.  She is the only named plaintiff in her case.  For this reason, whether others who work for Roswell believe that they were discriminated against on

the basis of race is not material to the issue of whether plaintiff was terminated because of her race.

Plaintiff's belief that she was discriminated against, without more, is insufficient as a matter of law to meet her evidentiary burden under Title VII. *Gross*, 232 F. Supp. 2d at 72 (holding that plaintiff's conclusory statements and subjective feeling that she was treated differently because of her gender are insufficient to survive summary judgment); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (holding that plaintiff's "[feelings and perceptions] of being discriminated against [are] not evidence" of discrimination); *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (holding that "a *pro se* party's bald assertion, unsupported by evidence, is insufficient to overcome a motion for summary judgment") (internal quotations and citations omitted).

Even if plaintiff could make a prima facie case of racial discrimination, Roswell has provided ample evidence that plaintiff was terminated for a legitimate, nondiscriminatory reason:  because she was absent from her job without authorization for several days. Dkt. #81-2, ¶ 10; Dkt. #83-2, ¶ 11.  According to the sworn affidavits of plaintiff's supervisor and Roswell's Director of Employee Benefits and Services, plaintiff failed to show up, or apparently even call in, for four or more of her scheduled work days between September 24, 2011, and October 7, 2011.  Dkt. #83-2, ¶ 11; Dkt. #83-8, ¶¶ 6, 11.  Defendant contends, and there is no reason to doubt, that plaintiff's unscheduled absences, taken without any notice, were disruptive to Roswell's food service operations.  Dkt. #83-2, ¶ 11.  Despite numerous opportunities to do so, plaintiff

never submitted a CMC justifying her absence during the relevant period.  Dkt. #83-8, ¶ 11.  Plaintiff also neglected to grieve the resulting NODs, prompting her termination. Dkt. #81-2, ¶ 20.

Plaintiff has offered no evidence that Roswell's proffered reason was a pretext for racial discrimination.  Instead, plaintiff has raised issues regarding her union representation, the service of her NODs, and the investigation into her unauthorized absences that are immaterial to whether Roswell discriminated against her on the basis of race.  Regarding her union, plaintiff contends that the union failed to file a grievance on her behalf even though she asked her representative to do so before the grievance period expired (Dkt. #85, p. 5); her representative was obligated to grieve the NOD even if she had not asked (Dkt. #85, p. 9); and her representative did not appear at her "employee relation board" meeting held several months after her termination (Dkt. #85, p. 8).  CSEA is not a named party to this action nor is plaintiff's union representative. This reason alone renders plaintiff's allegations immaterial.  Moreover, the PERB already determined that it was plaintiff's own failure to timely grieve her NODs, and not her union's fault that she missed the deadline.  Dkt. #81-2, ¶ 28.  Finally, plaintiff alleges that the last discriminatory act against her occurred on December 29, 2011, the date that Roswell terminated her.  Dkt. #20, p. 3.  Whether the union appeared at a meeting after that date has no bearing on her Title VII claim.

Plaintiff also questions why she was not personally served with her October 28, 2011 NODs (Dkt. #85, p. 5), why her administrative interviews were

cancelled (Dkt. #85, p. 13), and why Roswell considered the October 18, 2011 CMC "incomplete" (Dkt. #85, p. 10).  None of these questions creates a genuine issue that precludes summary judgment in Roswell's favor.  According to the CSEA Agreement, Roswell was only required to personally serve a NOD if it was "possible" to do so; otherwise, service by certified or registered mail was acceptable.  Dkt. #83-10, p. 3.  By her own account, plaintiff was out on leave in September and October and only returned to work on November 3, 2011.  Dkt. #85, p. 4.  Therefore, Roswell, through no fault of its own, was unable to serve plaintiff personally.  More importantly, plaintiff does not dispute that she received the October 28, 2011 NODs and failed to grieve them, thus, opening the door for her termination.  Dkt. #83-3, pp. 3, 11-12.  The record shows that plaintiff was interviewed at least once on November 28, 2011, and had a CSEA representative with her.  Dkt. #21, p. 45; Dkt. #71, pp. 7, 15.  That later interviews were cancelled does not prove, or even suggest, that plaintiff was discriminated against on an impermissible basis.  Finally, the October 2011 CMC signed by Nurse Rejman does not identify the "Dates Covered by the Certification," and therefore, is incomplete.  Dkt. #83-13, p. 2.  This is significant because the CMC, which was signed on October 18, 2011, does not address plaintiff's prior absences from work in late September and early October 2011 for which she was terminated.

On this record, no rational jury could find in plaintiff's favor on her Title VII claim, and there is no genuine issue of material fact to preclude a grant of summary judgment in defendant's favor.  Accordingly, plaintiff's Title VII claim is dismissed.

**RETALIATION**

Plaintiff contends that Roswell terminated her immediately after it learned that the E.E.O.C. had "dismissed" her claim, suggesting that she was fired in retaliation for complaining of discrimination. Dkt. #85, p. 7. Specifically, plaintiff contends that Roswell "waited" to fire her because "an employer cannot terminate an employee when the E.E.O.C. charge is still open." Dkt. #85, p. 7. To make a prima facie case of retaliation, an employee must show that she was engaged in protected activity; that the employer was aware of that activity; that she suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Temporal proximity can, under certain circumstances, demonstrate a causal nexus between protected activity and adverse employment actions. *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001).

It is undisputed that Roswell disciplined plaintiff numerous times for excessive tardiness, unscheduled absences, and unauthorized absences. Dkt. #81-2, ¶ 8; Dkt. #83-6, p. 2; Dkt. #84-7, pp. 1-39. Plaintiff's employment record shows that she was formally disciplined for time and attendance violations at least 8 times beginning in 2005, before she filed any complaints of discrimination. Dkt. #83-6, p. 2.

Specifically, plaintiff was issued NODs for the following time and attendance violations: failing three times in one month to show up to work or to notify her supervisor that she would not be coming in within one hour of her scheduled shift (March 2005) (Dkt. #84-7, p. 4); 13 unscheduled absences (July 2008 - March 2009) (Dkt. #84-7, pp. 18-19); 6 additional unscheduled absences (June 2009 - March 2010) (Dkt. #84-7, p. 25); 4 additional unscheduled absences, one where she left work over 7 hours early (May - October 2010) (Dkt. #84-7, p. 34); arriving late to work 14 times, once by more than 3 hours (May 2007 - April 2009) (Dkt. #84-7, pp. 15, 18); arriving late for her scheduled shift another 19 times (April 2010 and July 2011) (Dkt. #84-7, p. 31, 37); and working only part of her shift on two separate days, resulting in a loss of over 8 work hours (May 2010) (Dkt. #84-7, p. 32).

If plaintiff had not amassed such a substantial number of time and attendance violations, she could not have been terminated under the CSEA Agreement for her unauthorized absences in September and October 2011. Dkt. #83-10, p. 10; CSEA Agree. § 33.3, "Time and Attendance Schedule" (setting forth dismissal as the maximum possible penalty for 3 or more NODs for unauthorized absences). This Court finds that the temporal proximity between the dismissal of plaintiff's EEOC complaint and her firing, standing alone, is insufficient to establish a claim of retaliation, given the fact that plaintiff's time and attendance NODs began to mount well before she ever complained of discrimination. Plaintiff's temporal "evidence" of retaliation is further undermined by Roswell's explanation that consistent with the Panel procedures (Dkt. #83-15, ¶¶ 16-17), the State did not authorize Roswell to fire plaintiff until

December 22, 2011, and that Roswell waited until after the Christmas holiday to fire her

(Dkt. #83-15, ¶ 18).  This is a feasible, nondiscriminatory explanation for the timing of

plaintiff's firing which is supported by ample evidence.  For these reasons, defendant is

entitled to summary judgment dismissing plaintiff's claim of discriminatory retaliation.


**ADA**

Plaintiff also claims that Roswell discriminated against her because of her

disability in violation of the ADA.  The ADA prohibits "covered" employers from

discriminating against qualified individuals with a disability with respect to conditions of

employment, including hiring, advancement, discharge and compensation.

42 U.S.C. § 12112(a).  The ADA also requires an employer to make "reasonable

accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability who is an applicant or employee, unless such covered entity

can demonstrate that the accommodation would impose an undue hardship on the

operation of the business of such covered entity . . . ."  42 U.S.C. § 12112(b)(5)(A).


Employment discrimination claims brought under the ADA are analyzed

using the same standard applied to Title VII claims.  *See McBride v. BIC Consumer*

*Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  Using this familiar framework, courts

first examine whether the plaintiff can establish a prima facie case of disability

discrimination.  If the plaintiff succeeds, the burden of production shifts to the employer

to articulate a legitimate, nondiscriminatory reason for taking the adverse employment

action.  If the employer meets its burden, the plaintiff must demonstrate that the

employer's stated reason was a pretext for discrimination.  *See Kloupte v. MISYS Intern. Banking Sys.*, 251 Fed. Appx. 59, 60 (2d Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802, 804).

To establish a prima facie case of discriminatory discharge under the ADA, plaintiff must demonstrate that: (1) the employer is covered by the statute; (2) plaintiff suffers from a disability as defined by the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she was fired because of her disability.  *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004); *Bonilla v. Boces*, No. 06-CV-6542, 2010 WL 3488712, at *4 (W.D.N.Y. Sept. 2, 2010).  To make a prima facie case of discrimination based on an employer's failure to accommodate, plaintiff must show that:  (1) she is an individual with a disability as defined by the ADA; (2) the employer had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job; and (4) the employer refused to make a reasonable accommodation.  *See Morse v. JetBlue Airways Corp*, 941 F. Supp. 2d 274 (E.D.N.Y. 2013) (citing *McBride*, 583 F.3d at 96-97).

The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A) (2005).  Plaintiff contends that she is disabled as a result of Tinnitus and "situational anxiety."

With respect to discriminatory discharge, plaintiff has not offered any proof that she was fired because of her disability.  Even if plaintiff had, Roswell has offered a legitimate, nondiscriminatory reason for terminating plaintiff:  because she was absent multiple times from work without authorization.  As discussed at length above, plaintiff has failed to show that this proffered reason was a pretext for discrimination.

Regarding failure to accommodate, the record is clear that Roswell made every requested accommodation for plaintiff's Tinnitus and anxiety.  It is undisputed that after plaintiff advised Roswell of her Tinnitus, Roswell relieved her from working under the kitchen grill and stove fans – even from cleaning or mopping that area – and allowed her to wear soft foam earplugs to alleviate her condition.  Dkt. #81-2, ¶ 6; Dkt. #83-2, ¶ 9; Dkt. #83-4, p. 2; Dkt. #84-1, p. 2.  Plaintiff admitted at her deposition that she never asked for a further accommodation for her Tinnitus.  Dkt. #83-3, p. 6.  Roswell also permitted plaintiff to take leave for her anxiety under the FMLA.  Dkt. #21, p. 3; Dkt. #83-2, ¶ 10; Dkt. #21, pp. 33, 49.  Plaintiff's second leave approval was subject to the requirements that plaintiff certify her medical condition and submit a CMC for absences greater than 4 work days "even those associated with FMLA covered conditions."  Dkt. #21, p. 49; Dkt. #85, p. 20.  These requirements were reasonable given the transient or "situational" nature of plaintiff's anxiety as documented by Nurse Rejman.  Dkt. #21, pp. 8, 18, 22-23, 24.  Plaintiff has offered no evidence that she asked for any other accommodation for her anxiety or that Roswell declined to make such accommodation.

Based on the foregoing, no rational jury could find in plaintiff's favor on her ADA claim, and defendant is entitled to summary judgment dismissing this claim.


**HIPAA VIOLATIONS**

Plaintiff asserts that Roswell violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by requesting medical documentation from her and sharing that information internally.  "Although HIPAA generally provides for the confidentiality of medical records . . . an individual cannot sue for its enforcement or for damages caused by disclosures." *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *9 (S.D.N.Y. 2012) (citing 42 U.S.C. §§ 1320d-1 to d-7). Rather, HIPAA provides that only the Secretary of Health and Human Services or other authorized state authorities may bring a HIPAA enforcement action.  *See* 42 U.S.C. § 300gg–22.


"Without a showing of congressional intent, a cause of action does not exist and courts may not create one." *Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 116 (2d Cir. 2007).  Consistent with this reasoning, courts have held that HIPAA does not provide for an express or implied private right of action.  *See Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 376-77 (S.D.N.Y. 2009); *Acara v. Banks,* 470 F.3d 569, 571 (5th Cir. 2006) (stating that "we are not alone in our conclusion that Congress did not intend for private enforcement of HIPAA."); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1081 (9th Cir. 2007) (holding that "HIPAA itself provides no private right of action."); *accord Runkle v. Gonzales,* 391 F.

Supp. 2d 210, 237 (D.D.C. 2005); *Valentin Munoz v. Island Fin. Corp.,* 364 F. Supp. 2d

131, 136 (D.Puerto Rico 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.,* 173 F.

Supp. 2d 1176, 1180 (D.Wyo. 2001); *Royce v. Veteran Affairs Reg'l Office,* No. 08 Civ.

01993(KMT)(KLM), 2009 WL 1904332, at *6 (D.Colo. July 1, 2009); *Hines v. N. W.Va.*

*Operations,* No. 08 Civ. 144(FPS), 2009 WL 1228305, at *3 (N.D.W.Va. May 1, 2009).

Because plaintiff cannot sustain a private cause of action under HIPAA, defendant is

entitled to judgment as a matter of law on this claim.


## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment

(Dkt. #71) is DENIED and defendant's cross-motion for summary judgment (Dkt. #81) is

GRANTED.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
              **March 31, 2016**

                                    *s/H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**